# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

No. 01-6062WA

---

| | | |
|---|---|---|
| In re: Pauline Victoria Ford | * | |
| | * | |
| Debtor | * | |
| | * | |
| Pauline Victoria Ford | * | Appeal from the United States |
| | * | Bankruptcy Court for the |
| Plaintiff-Appellee | * | Western District of Arkansas |
| | * | |
| v. | * | |
| | * | |
| Student Loan Guarantee Foundation | * | |
| of Arkansas | * | |
| | * | |
| Defendant-Appellant | * | |

---

Submitted: November 5, 2001
Filed: November 21, 2001

---

Before KOGER, Chief Judge, KRESSEL and DREHER, Bankruptcy Judges

KOGER, Chief Judge

The Student Loan Guarantee Foundation of Arkansas ("SLGF") appeals from the Order of the Bankruptcy Court[1] declaring the student loan debt owed to it by

---

[1] The Honorable Robert F. Fussell, United States Bankruptcy Judge for the Eastern and Western District of Arkansas.

Debtor Pauline Victoria Ford to be dischargeable under 11 U.S.C. § 523(a)(8). For the reasons that follow, we affirm.

FACTUAL BACKGROUND

The Debtor, who has represented herself *pro se* throughout these proceedings and in this appeal, filed her Chapter 7 bankruptcy petition on February 27, 1998. On April 28, 1998, she filed an adversary proceeding to determine the dischargeability of her student loan debt. On February 23, 1999, her case was converted to Chapter 13 and, shortly thereafter, the adversary action regarding her student loans was dismissed upon agreement of the parties. On October 7, 1999, the Debtor's Chapter 13 case was converted back to Chapter 7 and an Order of Discharge was entered on November 24, 1999.

On June 30, 2000, the Debtor filed a motion to reopen her Chapter 7 case so that she could file a new adversary action seeking to have her student loans declared dischargeable. The Bankruptcy Court granted her motion and reopened the case on September 18, 2000, for the purpose of determining the dischargeability of the Debtor's student loan debt.

The Debtor filed her adversary complaint on October 16, 2000, and the Bankruptcy Court conducted a trial and a subsequent telephone conference on the complaint. At the time of trial, the Debtor owed over $73,000 in student loan debts which she had obtained between 1985 to 1990 and which she used to obtain a Bachelor of Arts Decree at the University of Arkansas and to attend one year of law school. On July 31, 2001, the Bankruptcy Court entered a judgment declaring the student loan debt to be dischargeable, finding that repaying the loan would cause an undue hardship for the Debtor. The SLGF appeals.

## STANDARD OF REVIEW

We review the Bankruptcy Court's factual findings for clear error and its conclusions of law *de novo*. See Andresen v. Nebraska Student Loan Program, Inc. (In re Andresen), 232 B.R. 127, 128 (B.A.P. 8th Cir. 1999); Eilbert v. Pelican (In re Eilbert), 162 F.3d 523, 525 (8th Cir. 1998). A determination of undue hardship is a factual determination and is reversible only if we find clear error. See In re Andresen, 232 B.R. at 128. A finding is clearly erroneous if we are left with a firm and definite conviction that a mistake has been committed by the Bankruptcy Court. See Svoboda v. Educational Credit Mgmt. Corp. (In re Svoboda), 264 B.R. 190, 194 (B.A.P. 8th Cir. 2001). "To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." In re Papio Keno Club, Inc., 262 F.3d 725, 728 (8th Cir. 2001) (citation omitted).

## DISCUSSION

Section 523(a)(8) provides that student loans issued or guaranteed by the government are nondischargeable "unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The Bankruptcy Code contains no definition of undue hardship and so a bankruptcy court must determine if the facts of a particular case warrant a finding that a student loan debt is dischargeable. See In re Andresen, 232 B.R. at 137; Chapman v. California Student Aid Comm'n (In re Chapman), 238 B.R. 450, 454 (Bankr. W.D. Mo. 1999). The debtor has the burden of proving by a preponderance of the evidence that her circumstances warrant a discharge of the student loans on the basis of undue hardship. See McCormick v. Diversified Collection Servs., Inc., 259 B.R. 907, 909 (B.A.P. 8th Cir. 2001).

In In re Andresen, 232 B.R. at 139-40, we adopted the "totality of circumstances" test enunciated by the Eighth Circuit Court of Appeals in Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews), 661 F.2d 702 (8th Cir. 1981). The "totality of circumstances" test requires the bankruptcy court to analyze the following: 1) the debtor's past, current and reasonably reliable future financial resources; 2) the debtor's and his or her dependents' reasonable necessary living expenses; and 3) any other relevant facts and circumstances in the particular bankruptcy case. See Andresen, 232 B.R. at 139. See also In re Svoboda, 264 B.R. at 194; McCormick v. Diversified Collection Servs., 259 at 909; Cline v. Illinois Student Loan Assistance Assoc. (In re Cline), 248 B.R. 347, 349 (B.A.P. 8th Cir. 2000).

In the case at bar, the Bankruptcy Court considered in its Memorandum Opinion each of these factors and decided that they weighed in favor of discharging the student loans. We find no clear error in the Bankruptcy Court's conclusions.

1. The Debtor's current and future financial resources

The evidence showed that the Debtor, a 62-year old single woman with no dependents, is employed by the Pearson Law Firm as an office administrator and private secretary to the owner of the firm. She suffers from arthritis and, although she is physically at the office for eight to ten hours a day, she is able to actually perform work only four or five hours a day because she must take frequent breaks and rest periods throughout the day. The testimony at trial indicated that the Debtor usually does not come in to the office until one o'clock in the afternoon because, due to her arthritis, she has difficulty getting out of bed and moving around in the mornings. She often stays at the office until seven o'clock or later in the evening and she sometimes does her work from home, usually when her arthritis is particularly bad. The firm pays her $700 per month pursuant to an oral agreement. The Debtor also receives social security disability payments in the amount of $638 per month, for a total monthly income of $1,338.

The Bankruptcy Court's determination that this factor weighs in favor of the Debtor is supported by the evidence. While the Court found that the Debtor is mentally capable of performing any number of jobs and that her legal skills and administrative experience would be an asset to many law firms, the Court found that the Debtor's physical condition prevents her from being employable at a higher salary. In addition, the Court found that, due to her age, it is probable that the Debtor's condition will continue to deteriorate and, in that event, her ability to work will decrease while her medical expenses will likely increase. Finally, the Court noted that the Debtor's employment with the Pearson Law Firm arose from a personal friendship with the firm's owner and that it would be unlikely for the Debtor to be able to find an employer so willing to accommodate her physical infirmities. Thus, the Court found that it was unlikely that the Debtor's financial resources would increase in the foreseeable future.

These findings are all supported by the evidence and, consequently, the Bankruptcy Court's conclusion that this factor weighed in favor of the Debtor was not clearly erroneous.

2. The Debtor's necessary reasonable living expenses

The Debtor's Schedule J reflected the following monthly expenses, totaling $1,338.00:

| | | |
|---|---|---:|
| Rent: | | $200.00 |
| Utilities: | Electricity and heating fuel | 50.00 |
| | Telephone | 30.00 |
| | Garbage | 10.00 |
| | Cable | 30.00 |
| Food: | | 250.00 |
| Clothing: | | 50.00 |
| Laundry and dry cleaning: | | 20.00 |
| Medical and dental expenses: | | 205.00 |

Transportation (not including car payments):        150.00
Homeowner's or renter's insurance:        26.00
Auto insurance:        100.00
Personal property tax:        4.50
Income taxes:        12.50


The Bankruptcy Court found that, of the factors it was required to consider under the Andrews test, this factor weighed most heavily in favor of the Debtor. Specifically, the Court found that the Debtor's expenses were well within reason, noting particularly that the Debtor did not allocate any funds in her Schedule J to recreation, clubs and entertainment, life and health insurance, or to charitable contributions. The Court further found that the Debtor's frugal expenses consumed all of her scheduled income, and as a result, the Court found that the Debtor had no excess funds in her budget to finance the repayment of a $74,000 student loan that continues to accumulate interest. According to the Bankruptcy Court, "through no particular fault of her own, [the Debtor] does not have the current financial resources, and will not have future financial resources, to fund her reasonable living expenses and make any payment toward defraying her student loan debt."

We think that this finding is amply supported by the evidence. As a result, we find no clear error in the Bankruptcy Court's conclusion that the second Andrews factor weighs in favor of finding that the Debtor's student loans be dischargeable.

3. Other relevant facts and circumstances

Considering the evidence in this case, the most notable "other relevant factor" here is the fact that the Debtor is 62 years old, she suffers from a disability, and it is likely that her physical condition and ability to work will only continue to deteriorate. The Eighth Circuit Court of Appeals has observed that it is appropriate to consider a debtor's disease or disability as a factor in the determination of undue hardship because such a situation often requires expensive treatment and may effect an

individual's ability to work. See Andrews, 661 F.2d at 704-705. Moreover, the Eighth Circuit has recognized that "the bankruptcy court's determination of undue hardship will necessarily involve a certain amount of speculation about the debtor's financial circumstances." Id. at 705 n.5. As a result, consistent with the observations made by the Eighth Circuit in Andrews, we agree that the Debtor's age and physical condition in this case weigh rather heavily in favor of discharging the student loans.

We also agree with the Bankruptcy Court's determination that the Debtor's failure to make voluntary payments against the debt or attempt to pursue her forbearance or deferment options is not determinative in this case. As the Bankruptcy Court held, this is merely one factor in many that weigh on the Court's totality of the circumstances inquiry.

Furthermore, a forbearance or deferment is a particularly unrealistic option in this case, given that the Debtor is 62 years old and that, under the twenty-five year income contingent repayment plan proposed by SLGF, the Debtor would be 87 years old before she would be relieved of the burden of these student loans. In addition, SLGF concedes that, even under the income contingent repayment plan, the Debtor would actually make no payments because she does not have the sufficient discretionary income to do so and, at the end of the 25 years, the debt will be forgiven in any event. Apparently, SLGF is merely hoping that the Debtor might have greater income at some point in the next 25 years to permit her to make payments on the student loans. However, given the unlikelihood that the Debtor will ever make more money than she does right now, this would result in her carrying around a very large and ever-increasing debt until it is forgiven when she is 87 years old. We agree with the Bankruptcy Court, therefore, that this factor does not significantly sway the balance of the totality of the circumstances.

CONCLUSION

After reviewing the evidence and testimony in this case and after carefully considering the arguments raised by SLGF on appeal, we simply are not left with a definite and firm conviction that a mistake has been committed by the Bankruptcy Court. As a result, the Bankruptcy Court's conclusion that the student loan debt was dischargeable is not clearly erroneous. The judgment is, therefore, affirmed.

A true copy.


Attest:


CLERK, U.S. BANKRUPTCY APPELLATE PANEL
EIGHTH CIRCUIT